# ALLSTATE R3000 EXCLUSIVE AGENT EMPLOYMENT AGREEMENT

This Employment Agreement is between Allstate Insurance Company and such affiliates and subsidiaries as are named in the Supplement for the R3000 Agreement, as may be amended from time to time, (referred to in this Agreement as "the Company") and ADETOLA ADU-NYAMEKYE (referred to in this Agreement as "you").

The Company and you agree as follows:

I. EMPLOYMENT:

  A. Effective 1st NOVEMBER, 2004, the Company employs you and you accept employment as an Exclusive Agent. The terms and conditions of employment will be governed by this Agreement and the Company's rules, regulations, and procedures, as may be amended from time to time. The Company reserves the right to make whatever changes in the terms and conditions of your employment as it may deem necessary and appropriate in the furtherance of its business objectives, subject to the terms and conditions of this Agreement. Nothing contained in this Agreement will be construed as entitling you to any further relationship with the Company in any capacity after the termination of this Agreement.

  B. This Agreement is the sole and entire employment agreement between the Company and you, and it supersedes and replaces any prior employment, agency, or other agreement between the Company and you. This Agreement also supersedes any prior oral statements and representations by the Company to you and any prior written statements and representations by the Company to you in letters, manuals, booklets, memoranda, or any other format.

  C. The Supplement for the R3000 Agreement ("Supplement"), the Exclusive Agent Employee Manual ("Manual"), and the Allstate Agency Standards ("Agency Standards"), as they may be amended from time to time, are expressly incorporated in their entirety as part of this Agreement. The Company reserves the right to amend the Supplement, including compensation amounts and rules, the Manual, and Agency Standards at any time without prior notice to you.

II. DUTIES AND CONDITIONS:

During the term of this Agreement:

  A. You will actively participate in the education program prescribed by the Company which is designed, among other things, to familiarize you with the nature of the Company's business; the Exclusive Agent program; the products offered by the Company in connection with such program; the premiums and other charges for such insurance products; the Company's rules governing the binding, acceptance, renewal, rejection and cancellation of risks, and the adjustment and payment of losses; and the methods of selling insurance and operating a business which the Company deems advisable. As part of the education program, you will attend, actively participate in, and successfully complete such courses, seminars, tests, and other activities as the Company or its authorized representatives may direct.

  B. You will meet certain activity requirements as established for you by the Company.

  C. You will meet certain production requirements as established for you by the Company.

  D. You agree that you will meet the standards established by the Company for customer service including, but not limited to, the installation of prescribed business processes.

R3000 - 5

06/23/2006 1:1



PLAINTIFF'S EXHIBIT 2

JUN. 23. 2006  3:54PM    ALLSTATE                                            NO. 147    P. 3

E.  You will act as an agent of the Company for the purpose of soliciting, selling, and servicing insurance and such other business as is specified in the Supplement (referred to in this Agreement as "Company Business"). You will carry out all activities in the performance of such duties according to the terms of this Agreement and the Company's then current rules, regulations, and procedures under the direction and control of the Company or its authorized representatives. As an agent of the Company, you will provide customer service, including the collection of payments, for any and all Company policyholders and you will assist in claims administration.

F.  You agree that you will maintain any required agent and securities licenses in the state or states in which you will be appointed to represent the Company.

G.  You agree to cooperate fully in the quality control program conducted by the Company relating to the use of its service marks and trade names. The Company will have the right to specify, delineate, or limit the services or goods on, or in connection with, which you may use any of its service marks or trade names. In the event that the nature or the quality of the services or goods on or in connection with which you use any of the service marks or trade names of the Company is not acceptable to the Company, then the Company, at its sole discretion, will have the right to require you to institute appropriate procedures to correct any deficiencies noted by the Company.

H.  You agree to assist the Company in protecting and enforcing the rights of the Company in and to any and all of its service marks and trade names that you may then be using.

I.  You agree you will only use advertising copy approved by the Company.

J.  You agree that the Company will have the authority to use your name and signature, or facsimile thereof, on policy documents and customer communication materials.

III. PERFORMANCE OF DUTIES:

A.  As a full-time employee of the Company, you agree that you will devote your entire business time and use of the office location facilities and equipment to the performance of this Agreement.

B.  You agree at all times to perform industriously, and to the best of your ability, experience, and talents, all of the duties that may be required of you pursuant to the terms of this Agreement and to the satisfaction of the Company.

C.  Except as permitted by Section IV of this Agreement, you will not represent or solicit any business for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company.

IV. RESIDUAL MARKET BUSINESS:

In as much as you are a full-time employee of the Company and have agreed to devote your entire business time to the Company's business, you may write applications for insurance under an assigned risk, cooperative industry, or government established residual market plan or facility ("Residual Market Plan") only in accordance with the Company's rules, regulations, and procedures. The Company may approve of your receipt of compensation for such business from a source designated by a Residual Market Plan, or the Company may require you to assign to the Company your rights to the expirations or commissions for such business that you produce. Should the Company require such an assignment, you will receive compensation from the Company for such business that is written following the assignment in accordance with the then current provisions of the Supplement.

R3000 - 5

V.  COMPANY PROPERTY, CONFIDENTIALITY:

   A. The Company will furnish you such forms, manuals, records, and other materials and supplies, as the Company deems advisable to assist you. All such property and information furnished by the Company will remain the property of the Company.

   B. You agree that you will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information or any information containing trade secrets concerning any matters affecting or relating to the pursuits of the Company, except upon direct written authority of the Company. Furthermore, upon termination of this Agreement, you agree to treat as confidential and not to disclose, either directly or indirectly, to any third party any confidential information or trade secrets of the Company.

   C. Confidential information includes, but is not limited to: business plans of the Company; information regarding the names, addresses, and ages of prospects and policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public. All such confidential information is wholly owned by the Company. Such confidential information may be used by you only for the purposes of carrying out the provisions of this Agreement.

   E. Any confidential information or trade secrets recorded on paper, electronic data file, or any other medium, whether provided by the Company or by you, is the exclusive property of the Company as is any such medium and any copy of such medium.

   F. You recognize that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. You agree that, in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and you waive any defense to an application for such order, except that the violation did not occur. You agree that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

VI.  COMPENSATION AND EXPENSES:

   A. Beginning 1st Nov 2004, and until the termination of this Agreement, your base compensation will be $403 per week, plus any applicable overtime pay. Overtime pay will apply during such period to hours worked in excess of forty (40) in any workweek, including authorized paid time off during any workweek and will be computed at one-half the regular hourly rate of pay. The regular hourly rate of pay is determined by dividing the total weekly base compensation by the total of the number of hours worked plus any hours for authorized paid time off in such workweek. Base compensation will not be paid while on leave of absence or disability.

   B. Any compensation in addition to your base compensation will be calculated in accordance with the then current provisions of the Supplement.

   C. The Company reserves the right to make deductions in accordance with the then current provisions of the Supplement against the compensation payable to you for any business written

by you for which the customer did not pay, which the Company did not accept, or for which the compensation was not earned, but for which you received compensation. If, at the time of termination of this Agreement, you have received unearned compensation that the Company has not been able to recover, you agree to repay to the Company such unearned compensation.

D. You may not incur any expense not authorized by the Company.

E. All compensation payable to you by the Company will be subject to all applicable withholding requirements and employment taxes and will be paid net of such amounts.

VII. TELEPHONE:

All telephone numbers used in connection with business conducted pursuant to this Agreement are the property of the Company.

VIII. TERMINATION OF EMPLOYMENT:

A. Your employment and this Agreement may be terminated at will by either party, for any reason or no reason, subject only to such limitations and restrictions as may be imposed by law. Termination will be effective upon giving notice of termination orally or in writing, delivered personally, by facsimile transmission, or mailed to the last known address of the other.

B. Unless otherwise terminated, your employment and this Agreement will terminate automatically on the last day of the eighteenth calendar month following the date on which this Agreement first becomes effective. If this Agreement becomes effective on any day except the first day of a month, the eighteen-month period will be deemed to begin on the first day of the succeeding month. Your employment and this Agreement will also automatically terminate upon your death or failure to return to work upon expiration of a leave of absence.

C. Upon termination of this Agreement, your compensation for the month in which such termination occurs and your entitlement to other employment benefits, awards, or incentives, if any, will be determined in accordance with the then current provisions of the Supplement or other Company documents and the then current terms of any Company identified benefit plans.

D. Following the termination of this Agreement, unless you and the Company execute an agent agreement that becomes effective immediately after the termination of this Agreement, you will immediately:

1. Cease and desist from any and all use of Company service marks and trade names;

2. Return all Company property to the Company; and

3. Cease to use such telephone numbers referenced in Section VII above.

You agree that, for a period of one year following termination of this Agreement, you will not solicit the purchase of products or services in competition with those sold by the Company:

1. With respect to any person, company, or organization to whom you sold insurance or other products or services on behalf of the Company and who is a customer of the Company at the time of termination of the Agreement;

2. With respect to any person, company, or organization who is a prospect or customer of the Company at the time of termination of this Agreement and whose identity was discovered as a result of your status as a Company employee or as a result of your access to

confidential information of the Company; or

3. From any office or business site located within one mile of any location from which you solicited or sold insurance or other Company Business during the year immediately preceding termination of this Agreement.

In the event that such one-year period or one mile distance exceeds the time or distance permitted by any applicable law, such period or distance will be automatically adjusted to the maximum period or distance permitted by such law. If any other provision in this paragraph D conflicts with any law, it will be applied to the extent permitted by such law.

E. You recognize that a breach of any of the foregoing provisions will cause irreparable damage to the Company's business and that such damage will be difficult or impossible to measure. You agree that, in the event of any such breach, the Company, in addition to such other rights and remedies as it may have, may apply to any court of competent jurisdiction for an order requiring specific performance of the foregoing provisions or granting injunctive relief against any act which would violate any such provision.

F. You recognize and acknowledge that each of the foregoing provisions of this Section VIII is reasonable and necessary to protect and preserve the legitimate business interests of the Company, its present and potential business activities, and the economic benefits derived there from. You recognize and acknowledge that the foregoing provisions will not prevent you from earning a livelihood and are not an undue restraint on you.

IX. OFFICE LOCATION:

A. The Company will designate the location to which you will be assigned. Initially, you will be assigned to the location at 6750 Alexander Bell Dr. and authorized to receive and accept applications for insurance for risks located in the state(s) of MD. However, due to the inherent uncertainty of business conditions, the Company reserves the right in its sole discretion to change your office location and the state(s) in which you are appointed at any time. You understand that you have no exclusive territorial rights in connection with your office location.

B. You are authorized to sell insurance offered by the Company and Company business only in the state containing your office location and other states in which you are properly licensed and appointed as an agent by the Company.

X. OPERATION OF BUSINESS:

The Company will determine in its sole discretion all matters relating to its business and the operation of the Company, including, but not limited to, the following:

A. The determination of contract forms and provisions, premiums, fees, and charges for insurance and other Company business;

B. The acceptance or rejection of any application or the termination, modification, or refusal to renew any contract;

C. The limitation, restriction, or discontinuance of the writing or selling of any policies, coverages, lines, or kinds of insurance or other Company business; and

D. The obtaining of any licenses of the Company or the Company's withdrawal from any state, jurisdiction, or territory.

XI. LIMITED AUTHORITY:

You agree that you will not represent yourself as having any authority on behalf of the Company other than that specifically granted to you by the Company. You acknowledge that you will not alter any contract or incur any expense or obligation in the Company's name without prior written approval from the Company.

XII. MONEY COLLECTED BY YOU:

All payments collected or received by you in the performance of this Agreement are the property of the Company, will be treated as trust funds, and will be promptly transmitted to the Company without deduction for any purpose in the manner specified by the Company. You must maintain accurate records and current remittance reports which may be inspected by the Company at any time without notice and which shall be submitted to the Company in accordance with its rules and procedures.

XIII. OWNERSHIP OF BUSINESS AND POLICIES IN YOUR ACCOUNT:

   A. The Company will own all business produced under the terms of this Agreement. You acknowledge that you have no interest in or rights to any such business.

   B. Policies that are credited to your account are described in the Supplement. The Company will leave in your account all policies credited to your account so long as the policyholder resides within a state in which you are licensed and appointed by the Company, except that the Company may remove any policy from your account at the request of a policyholder.

XIV. GENERAL:

   A. This Agreement may not be modified except by a written agreement between the Company and you, which expressly states that it modifies this Agreement. No other written statements, representations, or agreements and no oral statements, representations, or agreements shall be effective to modify this Agreement. No representative of the Company shall have authority to modify this Agreement except as provided in this Section. Nothing in this Section shall affect the Company's right to amend the Supplement, Manual, and Agency Standards as provided in Section I. C.

   B. You acknowledge that you have reviewed the Supplement, Manual, and Agency Standards and that you have an ongoing responsibility to review all changes to the Supplement, Manual, and Agency Standards issued by the Company.

   C. References in this Agreement to the Supplement, Manual, Agency Standards, and rules, regulations, and procedures of the Company are references to the Supplement, Manual, Agency Standards, and rules, regulations, and procedures then applicable and in force during your employment.

   D. You acknowledge that you have read this Allstate R3000 Exclusive Agent Employment Agreement, understand it, and agree to be bound by its terms.

   E. The authority granted to you under this Agreement is nonexclusive. The term "Exclusive" as used in the title of this Agreement refers to the obligations assumed by you under Section III. C.

   F. The descriptive headings of this Agreement are intended for reference only and will not affect the construction or interpretation of this Agreement.

G. This Agreement is not transferable by you, and no rights or interests arising from it may be assigned by you except with written consent of the Company.

H. If any provision or part of this Agreement is held invalid for any reason, such invalidity will not affect any other provision or part of this Agreement not held invalid, and such remaining provisions and parts will remain in full force and effect.

I. The failure of either party to insist upon the performance of any of the terms of this Agreement in any one or more instances will not be construed as a waiver or relinquishment of the future performance of any such term. The obligation of the parties with respect to any such future performance will continue in full force and effect.

J. This Agreement will inure to the benefit of and will be binding upon the parties and their respective successors.

K. This Agreement may be executed in counterparts, each of which will be deemed an original.

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its authorized representative and you hereby accept employment pursuant to the terms of this Agreement.

ALLSTATE INSURANCE COMPANY

_____
(Manager)

2/23/2005
(Date)

YOU

ADETOLA ADU-OYNMELUYE
(Name)

10/12/2004
(Date)

R3000 – 5