**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GOODLUCK ONYENEHO, *et al.* | * |
| *Personally and On Behalf of All Others Similarly Situated* | * |
| Plaintiffs, | * |
| v. | * Civil Action No.: 06-CV-01365 |
| ALLSTATE INSURANCE COMPANY | * |
| Defendant. | * |

**PLAINTIFFS' EXPEDITED MOTION TO FACILITATE IDENTIFICATION AND NOTIFICATION OF SIMILARLY SITUATED EMPLOYEES**

Plaintiffs Goodluck Onyeneho and Adetola Adu-Nyamekye ("Plaintiffs"), by and through undersigned counsel, hereby move this Honorable Court to facilitate the identification and notification of similarly situated employees pursuant to the collective action provision of the Fair Labor Standards Act, and, in support thereof, states as follows:

### I.   PROCEDURAL BACKGROUND

On about August 1, 2006, Plaintiffs filed the above-captioned action, on their own behalf and on behalf of other similarly situated colleagues, against their former employer, seeking the recovery of unpaid wages under the Fair Labor Standards Act (hereinafter "FLSA"), and for other relief. Plaintiffs' file this "Expedited" Motion because the statute of limitations continues to run on potential opt-in Plaintiffs and does not cease until this Honorable Court grants this Motion and the Plaintiff opts-in.

### II.   FACTUAL BACKGROUND

Plaintiffs were employed by Defendant from approximately November, 2004 through

September 22, 2005. *See* Affidavit of Goodluck Onyenho, attached hereto as Exhibit 1 and Affidavit of Adetola Adu-Nyamekye attached hereto as Exhibit 2. During Plaintiffs' employment with Defendant, Plaintiffs regularly worked over forty (40) hours per week but were not compensated at the rate of one-and-one-half (1½) times their regular rate of pay for overtime hours worked. Plaintiffs were not exempt employees for purposes of overtime pay.

Throughout the time Plaintiffs worked for Defendant, Plaintiffs performed insurance sales for Defendant primarily from Defendant's office in Columbia, Maryland. During the time of their employment, Plaintiffs were not "full agents"; rather, Plaintiffs were trainees participating in an 18-month training program to become full-fledged insurance agents. Plaintiffs' job duties were limited to selling insurance while being closely supervised and assisted by a "full agent." Plaintiffs never had authority to make or modify a sale without the express permission of a supervisor and were otherwise severely restricted in their employment.

Plaintiffs signed the standard Allstate R3000 Exclusive Agent Employment Agreement with Defendant ("Agreement"), Attached hereto as Exhibit 3. The Agreement, in Article VI, "COMPENSATION AND EXPENSES," provides that "overtime pay will apply during such periods to hours worked in excess of forty (40) in any workweek, including authorized paid time off during any workweek and will be computed at one-half the regular hourly rate of pay." The Agreement further defines the "regular hourly rate of pay" as follows: "[t]he regular hourly rate of pay is determined by dividing the total weekly base compensation by the total of the number of hours worked plus any hours for authorized paid time off in such workweek." *Id.*

Plaintiffs have personal knowledge that other current and former employees of Defendant are similarly situated in that they (1) worked for Defendant as part of their insurance agent training program, (2) signed identical employment contracts with Defendant, (3) were paid according to the terms of said identical employment contract, (4) did not perform work that

2

would qualify as exempt from the overtime requirements of the FLSA, (5) worked in excess of forty (40) hours per week on a regular basis for Defendant during the relevant time period, and (6) were not compensated at a rate of one and one-half (1½) times their regular rate for overtime hours.

One such employee who regularly worked in excess of forty (40) hours per week and was not paid an overtime rate of one-and-one half (1½) her regular rate of pay is Latine Hallstead.[1] For the reasons set forth below, Latine Hallstead, and others who have yet to be identified, are entitled to be notified about their legal rights under the FLSA as well as the existence of this lawsuit as a means of enforcing those rights.

### III.  LEGAL ARGUMENT

**A.  This Motion Should Be Granted Because the FLSA Authorizes Similarly Situated Employees to Litigate as a Class**

Under 29 U.S.C. § 216(b) of the FLSA, "an action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." (Emphasis added.) Moreover, as succinctly stated by this Court in *McNeil v. District of Columbia*, 1999 WL 571004 (D.D.C. Aug. 5, 1999), "Exercising this court's discretion to assist all persons who may have a legitimate claim [for unpaid overtime] to assert is the only course of action consistent with the broad remedial goal of [the] FLSA; reducing the defendant's potential liability by making plaintiffs' notification of other claimants as difficult as possible is not." *Id*. at *3.

For approximately sixty-five (65) years, Federal courts have been examining the extent to

---

[1] Ms. Hallstead's affidavit is attached as Exhibit 4.  Exhibits A and B attached to the Hallstead affidavit demonstrate that the trainee agents were required to work 56 hours per week, and received only $57.57 for their 16 hours of overtime worked, far below even minimum wage for overtime hours.

which one or more named plaintiffs must be "similarly situated" to the proposed class of unnamed plaintiffs in order for all of the plaintiffs to proceed before the court together as a collective action. In *Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D. Ky. 1941), which involved a claim for unpaid overtime wages, the court thoroughly analyzed the "similarly situated" standard, and concluded as follows:

> The [FLSA] authorizes an employee to sue for himself 'and other employees similarly situated.' It is very comprehensive and inclusive; it contains no restrictions other than that the other employees be similarly situated. . . . *Employees may be similarly situated without being identically situated. The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other*.

*Id*. at 490 (emphasis added).

In the years following the *Shain* decision, this same conclusion has been reached by numerous other courts, including this Court. *See*, *e.g.*, *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997); *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982); *Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 169 (1989), the United States Supreme Court resolved a split among the circuits with respect to the role the courts should take in supervising the "opt-in" process and held that the district courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. In *Hoffmann-La Roche*, the Supreme Court also made the following important pronouncements: (1) once an action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is

4

accomplished in an efficient and proper way; *Id*. at 170-171; (2) it lies within the discretion of the trial court to begin its involvement early at the point of initial notice; *Id*. at 171; (3) by monitoring the preparation and distribution of the notice, the Court can insure that it is timely, accurate, and informative; *Id*. at 172; and (4) the district court has discretion, early in the litigation, to permit discovery of the names and addresses of employees to insure that such potential plaintiffs are promptly and accurately notified. *Id*. at 170; *see also Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991) (the remedial purposes are best served if the district court is deemed to have the power to give such notice to other protected members of the class provided the court is satisfied that there are other employees who desire to opt-in and who are similarly situated).

    Significantly, "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are 'similarly situated.'" *Levinson v. Primedia, Inc.*, No. 02 Civ.2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003). Moreover, the mere fact that the employees are categorized in a certain way by their employer[2] or that the employees may work in multiple locales[3] is irrelevant to the issue of whether or not they are similarly situated for purposes of a collective action under the FLSA.

---

[2] *See, e.g., De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (court authorized notice to potential plaintiffs in unpaid overtime case despite fact that plaintiffs worked "at various production positions within [defendant's] two plants").

[3] In *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997), the district court permitted an FLSA case to proceed as a collective action despite the fact that the proposed members of the class were from three different states – Virginia, Maryland, and the District of Columbia. *See id*. at 4; s*ee also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (court allowed plaintiffs to notify similarly situated employees in unpaid overtime case even though employees worked at 15 different restaurants).

### B. The Motion Should Be Granted Because the District Court is Authorized to Help Facilitate the Notification of Similarly Situated Employees

It is well-settled that "[d]istrict courts have the discretionary power to authorize the sending of notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70 (1989)); s*ee also Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same). Indeed, "it is 'unlikely that Congress, having created a procedure for representative action [under the FLSA], would have wanted to prevent the class representatives from notifying other members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) (citation omitted). Accordingly, such notice may be, and repeatedly has been, authorized and facilitated by district courts across the country in cases, like this one, involving claims under the FLSA for the recovery of unpaid overtime wages. *See*, *e.g.*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003); *Kane*, 138 F. Supp. 2d at 214; *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660 (E.D. Pa. 2001), *rev'd on other grounds*, 342 F.3d 301 (3rd Cir. 2003); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D. Ala. 1999); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 305-06 (S.D.N.Y. 1998); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002); *see also Carter v. Indianapolis Power and Light Co.*, No. IP102CV01812SEBVSS, 2003 WL 23142183 (S.D. Ind. Dec. 23, 2003); *De La Fuente v. FPM Ipsen Heat Treating, Inc.*, No. 02-C-50188, 2002 WL 31819226 (N.D. Ill. Dec. 16, 2002); *Harrington v. Education Mgmt. Corp.*, No. 02 Civ. 0787 (HB), 2002 WL 1343753 (S.D.N.Y. June 19, 2002); *Bontempo v. Westwood One Broad. Serv., Inc.*, No. 01-C-8969, 2002 WL 1925911 (W.D. Ill. May 3, 2002); *Vazquez v. Tri-State Mgmt. Co.*, No. 01C5926, 2002 WL

Case 1:06-cv-01365-ESH    Document 3    Filed 10/23/2006    Page 7 of 11

58718 (N.D. Ill. Jan. 14, 2002); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 (D. Or. Aug. 24, 2001); *Clark v. Dollar General Corp.*, No. 3:00-0729, 2001 WL 878887, at *3 (M.D. Tenn. May 23, 2001); *Krieg v. Pell's Inc.*, No. IP00-1230-C-T/G, 2001 WL 548394 (S.D. Ind. March 29, 2001).

The rationale for this court-facilitated notification procedure was best explained by the United States Supreme Court in *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165 (1989):

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongful] activity. *These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties.*

*Id*. at 170 (emphasis added).

The United States District Court for the District of Maryland has granted identical motions filed by counsel for Plaintiffs in three recent cases, *Venus Rawls, et al. v. Augustine Home Health Care, Inc.*, Civil Action No. WMN-05 -2602 (Motion granted by Judge Nickerson in January 2006); *Frisley Reyes, et al. v. Superior Maintenance & Management Company, Inc., et al.*, Civil Action No.: RWT-03-3631 (Motion granted by Judge Titus in late 2004); and *Turner v. Human Genome Sciences, Inc.*, Civil Action No. DKC-01-3580 (Motion granted by Judge Chasanow in 2002). In all three cases, additional plaintiffs joined after the Court ordered the defendant(s) to provide the names and addresses of similarly situated employees and notices were sent advising them of the pendency of the action and of the opportunity to join the lawsuit.

7

## C. The Motion Should Be Granted Because Plaintiff's Standard of Proof at this Stage is "Modest"

In making the "similarly situated" determination, most courts employ a two-step procedure which involves an initial assessment as to whether notification of similarly situated employees is warranted under the circumstances, and a subsequent, more finalized determination regarding the management and resolution of the claims filed by those employees who, having been so notified, actually elected to seek redress before the court. This procedure was summarized by the United States District Court for the Southern District of New York:

> Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.'" Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in the litigation process, after more thorough discovery.
>
> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs. I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties. Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination -- a determination that can be modified or reversed after discovery is complete. Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.[4]

*Gjurovich*, 282 F. Supp. 2d at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, No. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (the

---

[4] The New York court then noted that "should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same . . . [location] or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)).

8

first stage of the two-step procedure "requires a lax showing of 'similarly situated'"); *Carter*, 2003 WL 23142183, at *3 ("Before notice is authorized, the court is not required to come to a 'final determination' that the similarly-situated requirement has been met.").

Thus, under the current circumstances of the instant case, where Plaintiffs merely seek the identification of and notification to prospective class members at an early stage in the litigation, Plaintiffs "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Roebuck*, 239 F. Supp. 2d at 238 (emphasis added) (quoting *Realite*, 7 F. Supp. 2d at 306); *see also Pritchard*, 210 F.R.D. at 596. In other words, "plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Schwed*, 159 F.R.D. at 375-76; *see also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D. Minn. 1992) ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated").

The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA." *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)). Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiffs herein. *Kane*, 138 F. Supp. 2d at 214 (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Finally, it is important to note that prompt notification of the potential class members is critical in that, unlike a Rule 23 class action, the statute of limitations is not tolled for those

9

potential class members by the filing of the present Complaint. *See* 29 C.F.R. § 790.21(b) (in collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the action until such time as his/her written consent to become a party plaintiff is filed in the court).

    **D.**    **The Motion Should Be Granted Because Plaintiffs Have Met Their Burden of Demonstrating that Other Employees Were "Similarly Situated" With Respect to their Overtime Pay**

As set forth above and in the Affidavits of Plaintiffs and Latine Hallstead, attached hereto, Plaintiffs were not properly compensated for hours worked over forty (40) at a rate of one and one-half (1½) times their regular rate. In addition, as detailed in the Affidavits, there are other Allstate trainees who also were not exempt employees and who were not properly paid overtime wages as required by the FLSA. Moreover, with a practice of failing and refusing to pay overtime wages to Plaintiffs who had signed an R3000 Agreement -- notwithstanding that all such employees were non-exempt for overtime purposes -- it stands to reason that Defendant paid its other trainees who signed the R3000 Agreement in the same manner. This represents the potential for numerous other employees who have had their rights to overtime pay under the FLSA violated.

### IV.    CONCLUSION

It is abundantly clear that named plaintiffs in a lawsuit to recover unpaid overtime wages are permitted, with court approval, to provide notice of the suit to those potential plaintiffs who worked in a class of similarly situated employees. This case calls for such action.

WHEREFORE, Plaintiffs hereby respectfully request that this Honorable Court:

    A.    Enter an Order compelling Defendants to produce to Plaintiffs' counsel, within fifteen (15) days, a list of the full name, last known residential address, residential phone number, work address, work phone number, date of birth, social security number, and e-mail address of each and every individual who was employed by Defendant at any time since

September 2003, under the terms of the R3000 Agreement;

  B. Approve and sign the attached "Important Notice" form for future use in notifying the class of potential plaintiffs;

  C. And for all other and further relief that the nature of this cause may require.

            Respectfully submitted,

            _____/s/_____
            Philip B. Zipin, Bar No. 367362
            The Zipin Law Firm, LLC
            8403 Colesville Road, Suite 610
            Silver Spring, Maryland 20910
            Phone: 301-587-9373
            Fax: 301-587-9397
            Email: pzipin@zipinlaw.com

            *Counsel for Plaintiffs*