IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOODLUCK ONYENEHO, *et al.* | * |
| *Personally and On Behalf of All Others Similarly Situated* | * |
| Plaintiffs, | * |
| v. | * Civil Action No.: 06-CV-01365 |
| ALLSTATE INSURANCE COMPANY | * |
| Defendant. | * |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

Plaintiffs Goodluck Onyeneho and Adetola Adu-Nyamekye ("Plaintiffs"), by and through their attorneys, Philip B. Zipin and The Zipin Law Firm, LLC, hereby oppose the Motion to Transfer to the United States District Court for the District of Maryland ("Motion") filed by Defendant, Allstate Insurance Co. ("Defendant" or "Allstate"), and, in support thereof, states as follows:

**FACTUAL BACKGROUND RELEVANT TO TRANSFER**

As stated in the Complaint, Plaintiffs were employed as trainee insurance agents for Allstate. The Complaint cites four causes of action which all stem from the same set of facts: a failure to pay overtime wages due. Plaintiffs complain that Defendant violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage & Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401

*et seq*. ("MW&HL"), the Maryland Wage Payment & Collection Law, Maryland Code Annotated, Labor and Employment Article §§ 3-501 *et seq*. ("MWP&CL"), and breached an employment contract.

Plaintiffs signed the standard Allstate R3000 Exclusive Agent Employment Agreement with Defendant ("Agreement"), attached hereto as Exhibit 1. The Agreement, in Article IX, "OFFICE LOCATION," provides:

> "A.   The Company will designate the location to which you will be assigned. Initially, you will be assigned to the location at _____ and authorized to receive and accept applications for insurance for risks located in the state(s) of _____. However, due to the inherent uncertainty of business conditions, the Company reserves the right in its sole discretion to change your office location and the state(s) in which you are appointed at any time. You understand that you have no exclusive territorial rights in connection with your office location.
>
> B.   You are authorized to sell insurance offered by the Company and Company business only in the state containing your office location and other states in which you are properly licensed and appointed as an agent by the Company.

Throughout the time Plaintiffs worked for Defendant, Plaintiffs performed insurance sales for Defendant primarily from Defendant's office in Columbia, Maryland. <u>With the explicit approval of Allstate, however, Plaintiffs were also authorized to sell insurance for Allstate in the District of Columbia</u>. *See* Affidavit of Goodluck Onyeneho, attached hereto as Exhibit 2; Affidavit of Adetola Adu-Nyamekye attached hereto as Exhibit 3; and affidavit of Latine Halstead, attached hereto as Exhibit 4. Mr. Onyeneho sold between two and five policies to individuals located in the District of Columbia. Ms. Adu-Nyamekye sold approximately ten policies to District of Columbia residents. Ms. Halstead[1] has approximately one hundred and thirty three (133) policies located in

---

[1] Ms. Halstead is a current Allstate agent who fears retaliation if she joins this lawsuit. *See* exhibit 4, Halstead Affidavit.

the District of Columbia.  *See* Exhs. 2, 3, and 4, respectively.   Simply stated, they each conducted business on Allstate's behalf in the District of Columbia.

## ARGUMENT

Plaintiffs have asserted in the Complaint, and Defendant cannot seriously contest, that Defendant has availed itself of the privilege of doing business in the District of Columbia.  Therefore, Defendant is subject to personal jurisdiction in the District of Columbia.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the action has properly been brought in this Court.

Venue, of course, is a matter of convenience for the Court and the parties.  As this Court has recognized, for "corporate defendants, venue is proper in any district where the corporation 'resides,' which is defined as any district in which the corporation is subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. §1391 (b)-(c)." *Schmidt v. American Institute of Physics*, 322 F.Supp. 28, 32 (D.D.C. 2004).

This Court has recently set forth the standards to be considered in a case where venue, although proper, is challenged. In *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136 (D.D.C. 2004), the Court recognized that "courts generally must afford substantial deference to the plaintiff's choice of forum."  *Id*. at 141 (citing *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001).  Of course, Plaintiffs have chosen to proceed in this forum.

Defendant cites *Berenson v. Nat'l Fin. Servs., LLC*, 319 F.Supp. 2d 1, 3 (D.D.C. 2004) for the notion that Plaintiffs' choice of forum deserves "much" less deference in the class action or representative context than in a typical case with one plaintiff. *See* Def. Memorandum in Supp. of its Mot for Transfer of Venue, at 3 ("Memo").  <u>Defendant cites</u>

the wrong standard. Nowhere in the *Berenson* decision does the Court state, or even hint, that plaintiffs' choice of forum in the class action context deserves "much" less deference. Indeed, what the Court actually stated was that "plaintiffs' choice of forum deserves less weight than it is typically given." *Berenson,* 19 F.Supp.2d at 3. By adding the word "much," Defendant dramatically alters the standard in class action cases.[2]

Moreover, in deciding that less deference should be given to the plaintiff's choice of forum in *Berenson*, the *Berenson* Court was clearly persuaded by evidence not in evidence in this case. There, the defendants provided the Court with a chart containing potential members of plaintiff's class if class certification were granted. 19 F.Supp.2d at 3. The chart listed the percentage of potential class members who resided in various jurisdictions throughout the country, with the largest percentage residing in Massachusetts. *Id.* The Court, finding that Massachusetts had the largest amount of potential plaintiffs (15.36%), among other reasons, transferred the matter to Massachusetts. By contrast, the *Berenson* Court found that only .51% of the potential class members resided in the District of Columbia. *Id.*

Here, Defendants have not yet shared with the Plaintiffs or the Court how many potential opt-in plaintiffs there may be or which States they may come from. Of course, as noted above, there is no way of knowing how many, if any, opt-in plaintiffs may join this suit. In addition, as noted in the attached affidavits, Allstate has expressly authorized both Plaintiffs and Ms. Halstead to conduct business in the District of Columbia. Indeed,

---

[2]   It is also important to recognize that *Berenson* was decided in the context of Federal Rule of Civil Procedure 23 class actions, not FLSA collective actions. Although Defendant would have this Court treat such actions identically, they are vastly different in critical respects. Foremost, if certified, Rule 23 class action plaintiffs are automatically included in the class and must opt-out of the certified class if they do not wish to participate. Thus, once certified, it is highly likely the class will be quite large. Under the § 216(b) of FLSA, by stark contrast, plaintiffs must affirmatively opt-in, meaning that there will be far fewer members, if any, of the "class" under the FLSA collective action.

Plaintiffs and Ms. Halstead each had policy holders in the District of Columbia. Therefore, Plaintiffs' choice of forum must be given its proper due deference.

Defendant's "convenience of the parties" argument is easily discarded. Defendant argues that, because Plaintiff Onyenheo resides approximately three (3) miles closer to the U.S. District Court of Maryland and Plaintiff Adu-Nyamekye resides approximately fifteen (15) miles from the Courthouse, the "District of Maryland is more convenient for [ ] Plaintiffs." Memo at 7.  Phrasing Defendant's argument another way, Defendant argues that the District of Maryland is more convenient for the Plaintiffs because one of the Plaintiffs is perhaps one minute closer to the Maryland courthouse by car and the other Plaintiff is perhaps fifteen to twenty minutes closer by car.  Defendant's strained logic is lacking; an extra twenty minutes driving by car is *de minimis*, at best.

Of course, Defendant does not take into account that Plaintiffs' counsel is located in downtown Silver Spring, at the Silver Spring metro.  It would be <u>extremely</u> <u>convenient</u> for Plaintiffs to park here (at less than downtown Baltimore rates), consult with counsel, and ride the metro from Silver Spring, the Red Line, to the Judiciary Square stop metro, also on the Red Line.  Moreover, Plaintiffs may choose to take the Marc train and/or ride the metro to Judiciary Square themselves, an option Defendant apparently did not consider either.

Plaintiffs also take umbrage with Defendant's argument that Plaintiffs are forum shopping, a classic red herring argument. Defendant claims that the "fluctuating workweek method of paying overtime compensation … is a central issue in this case." Memo at 5.  Defendant apparently believes Plaintiffs filed in this Court to avoid Fourth Circuit precedent.  <u>That is not true</u>.

In truth, Plaintiffs do not believe the fluctuating workweek is even relevant to their claim and, if it turns out to be relevant, Plaintiffs did not choose to file in this Court because of any perceived bad precedent under Fourth Circuit law.

The Complaint plainly states:

"Each of the Plaintiffs <u>regularly</u> worked fifty-eight (58) hours per week during their employment, as, on information and belief, did the other agents in this training program. Defendant, however, failed to pay Plaintiffs overtime pay at the rate of one-and-one half Plaintiffs' regular rate for hours worked over forty (40) in a work week. Compl. ¶ 10. (emphasis added).

The fluctuating workweek, by contrast, requires that, *inter alia*, the employee's hours <u>fluctuate</u> from week to week. 29 C.F.R. § 778.114(a). Clearly, Plaintiffs did not allege their time fluctuated from week to week. Indeed, the schedule provided to Latine Halstead confirms the 58 hours per week schedule. *See* Exhibit 5. Moreover, the "fluctuating workweek" is actually a method by which overtime can be calculated when the overtime hours are unpredictable and uncertain. Not only were Plaintiffs' overtime hours predetermined, but the contract explicitly set forth that overtime over forty (40) hours would be paid at the time and one half rate. Exhibit 1 at Article VI.

Plaintiffs concede the obvious: Maryland courts have more familiarity with Maryland law. However, it is likely, although not definite, that if this Court denies Defendant's motion to transfer and grants Plaintiffs' motion to facilitate, other trainee-agents from across the country will affirmatively opt-in to this case. If so, the <u>main</u> issue in this case <u>will be</u> whether Plaintiffs are owed overtime under the FLSA. Plaintiffs are confident that this Court is certainly at least as equipped as any other federal court to decide matters arising under the FLSA.

## **CONCLUSION**

WHEREFORE, Plaintiffs hereby respectfully request that this Honorable Court DENY Defendant's Motion to Transfer.

Respectfully submitted,

___/s/_____
Philip B. Zipin, Esquire, Bar No.: 03932
8403 Colesville Road
Suite 610
Silver Spring, Maryland 20910
pzipin@zipinlaw.com
 (301) 587-9373 (ph)
(301) 587-9397 (fax)

*Counsel for Plaintiffs*